UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff(s), | ) | |
| | ) | |
| vs. | ) | Case No. 1:05CR 6 HEA |
| | ) | |
| GARY A. WILSON, | ) | |
| | ) | |
| Defendant(s). | ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The defendant is charged by Indictment with Being a Felon in Possession of a Firearm. The defendant has filed Defendant's Motion to Suppress Evidence (Document #15). The government has filed Government's Response to Defendant's Motion to Suppress Evidence (Document #16). An evidentiary hearing followed.

**Factual Background**

Sheriff Greg Melton of Carter County, Missouri, received a phone call from Chief Deputy Sheriff Campbell of Reynolds County, Missouri, informing him that a cabin in Reynolds County had been broken into and several weapons, firearms, had been taken. Deputy Sheriff Campbell continued that a black Blazer may have been used in the burglary, and the Blazer had some rusted spots around the rims.

At the evidentiary hearing, Sheriff Melton testified that he had seen a vehicle in his county before that fit that general description. He said it had been driven by a Phillip Kellett whose residence was located off County Road 315. There was another person down the road from Phillip Kellett and the black Blazer was at that person's home.

- 1 -

A Carter County deputy sheriff went to this other person's home and at the direction of Sheriff Melton asked the owner of the vehicle to come to the Sheriff's Department. The owner of the black Blazer came to the Sheriff's Office with his girlfriend and, when asked, identified himself as Harold Duke from Arkansas.

Sheriff Melton asked Duke about his involvement in any burglary, and Mr. Duke said that "Bubby" Cabot had used his vehicle but that Duke was not aware of any burglaries.

Sheriff Melton ran a record check on the name Harold Duke and the check showed no identification for him at that time.

Later, Sheriff Melton saw Mr. Duke in the Carter County Courthouse coming out of the Circuit Clerk's Office with his girlfriend. The Sheriff went to the Circuit Clerk and asked him what Mr. Duke wanted, and the Clerk said there was no Mr. Duke, that the man had given the name of Gary Wilson on an application for a marriage license.

Sheriff Melton asked to see the application and saw that the male applicant was Gary Wilson, and the record had his date of birth and Social Security number. The Sheriff then ran a check on the status of Mr. Wilson's driver's license. That check showed an active warrant for a parole violation out of Texas.

The Sheriff then went to visit Mr. Wilson at his residence. He was accompanied by Van Buren Police Officer Jason Adams. The officers went to the back door, which was open, and knocked. Mr. Wilson came to the door and the Sheriff said, "I need you to step out to my vehicle. I need to ask you a few questions."

They went to the Sheriff's vehicle, the Sheriff in the driver's seat and Mr. Wilson on the passenger side with the door open. He had one leg in the car and one leg outside the car. Sheriff Melton turned to Mr. Wilson and asked, "Are you Harold Duke or are you really Gary Wilson?"

Wilson replied, "I knew when I was applying to get married to my wife, my girlfriend, that you'd find out who I was."

At that point, the Sheriff pulled out a <u>Miranda</u> card and read the rights to Mr. Wilson in the presence of Officer Adams. Sheriff Melton asked Wilson if he understood the rights and he said yes. The Sheriff asked Mr. Wilson if there were any weapons or any drugs in his residence and Wilson stated there was a loaded .22 rifle in the bedroom. The Sheriff asked Wilson if Officer Adams could go into the residence because they wanted to check the paper to make sure it wasn't stolen. Mr. Wilson said that would be fine.

Officer Adams went in and came back with a serial number. The officers ran a check on the serial number to see if the rifle was stolen and it came back "not stolen."

When Mr. Wilson told the Sheriff that there was a .22 rifle in the bedroom, he asked the Sheriff, "You're not going to say anything to the State of Texas about this 'cause this could give me life." Mr. Wilson was transported to the Carter County Jail on the Texas arrest warrant.

## **Discussion**

The court finds no violation of the defendant's constitutional rights or violation of federal law in the above recitation of facts.

In Defendant's Motion to Suppress Evidence (Document #15), defendant alleges:

2. Prior to questioning by Sheriff Greg Melton, defendant refused to sign a document stating that he waived his right to remain silent.

3. Prior to said questioning, defendant invoked his right to remain silent.

4. Additionally, defendant was in a state of obvious intoxication and should not have been interrogated in his then existing condition.

There was no evidence adduced to support the allegation that the defendant refused to sign a document stating that he waived his right to remain silent. In fact, there was no evidence that the defendant was even offered a written waiver to sign. Sheriff Melton testified that as soon as Mr. Wilson admitted he was Gary Wilson, the Sheriff pulled out a Miranda card and read Mr. Wilson his rights. After Mr. Wilson said he understood his rights, the Sheriff asked if there were any weapons or drugs in the house, and Mr. Wilson admitted there was a loaded .22 rifle in his bedroom. There was no mention of a written waiver of rights. Even if there were, if the defendant waived his Miranda warnings orally, there was no requirement that he sign a written waiver. See Flamer v. Delaware, 68 F.3d 710, 719-720 (3d Cir. 1995) (valid waiver because defendant never invoked his rights, told police he knew his rights and answered question.); United States v. Yazzie, 188 F.3d 1178, 1192 (10th Cir. 1999) (valid waiver properly inferred because defendant refused to sign waiver but indicated a willingness to tell his side of the story.); Mincey v. Head, 206 F.3d 1106, 1131-32 (11th Cir. 2000) (valid waiver properly inferred though defendant refused to sign waiver because he "drew a sharp distinction between what he was willing to say and what he was willing to sign.").

The court finds there was no evidence that prior to questioning, the defendant invoked his right to remain silent. As the court has found, the defendant validly and with understanding, waived his right to remain silent.

Finally, defendant alleges he was in a state of obvious intoxication and should not have been interrogated. Sheriff Melton testified that Mr. Wilson stated that he understood his Miranda warnings. He had the awareness of the consequences of his actions so that he asked the Sheriff not to notify the State of Texas about his possession of the rifle because he knew that "this could give me life." Mr. Wilson "was able to walk, talk–to the vehicle, you know, he didn't swagger or sway." He did not trip or fall over anything on the way to the car. The Sheriff testified that Mr. Wilson gave

appropriate answers to his questions and did not slur any of his words. Mr. Wilson was not given a field sobriety test. The Sheriff believed Mr. Wilson understood, comprehended the rights that the Sheriff read to him. The Sheriff did not recall that Mr. Wilson had any trouble giving the booking officer at the jail his personal information. Mr. Wilson did smell of beer when he was questioned in the Sheriff's car. He did not have any trouble getting into the Sheriff's car.

Based on the testimony presented, the court finds that the defendant was not intoxicated nor were his faculties impaired when he waived his rights after he was read the Miranda warnings. In United States v. Contreras, 372 F.3d 974, 977-78 (8th Cir. 2004), the Court found the waiver of Miranda rights valid despite the defendant's use of methamphetamine the evening before and marijuana the day of consent because defendant appeared sober and in control of his faculties. See also United States v. Rodriguez-Rodriguez, 364 F.3d 1142, 1146 (9th Cir. 2004) (waiver valid despite defendant's statements that he was going through heroin withdrawal because facts indicated waiver was knowingly made); United States v. Curtis, 344 F.3d 1057, 1065-66 (10th Cir. 2003) (waiver valid despite defendant's alleged drug and alcohol intoxication and videotaped confession showing defendant slurring words because it was freely given and "no indication that his will was overborne.")

The court finds that the defendant was administered the Miranda warnings before he was interrogated; that he understood those warnings and knowingly waived his rights under Miranda.

Defendant's rights under the Fifth Amendment were not violated. Defendant's statements made to Sheriff Melton on May 11, 2004, were voluntarily made and are admissible at trial.

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the Defendant's Motion to Suppress Evidence (Document #15) be **denied.**

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(l), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/ Lewis M. Blanton
_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of October, 2006.